811 So.2d 1232 (2002)
Jaime BORDELON, et vir
v.
Tommy A. SAYER, National Automotive Insurance Company, State Farm Mutual Auto Insurance Company.
No. 01-0717.
Court of Appeal of Louisiana, Third Circuit.
March 13, 2002.
*1233 Kenneth E. Pickering, Pickering, Cotogno, et al., New Orleans, LA, for Defendants/Appellants: National Automotive Insurance Company, Tommy A. Sayer.
Anthony F. Salerio, Brian M. Caubarreaux, Caubarreaux & Associates, Marksville, LA, for Plaintiffs/Appellees: Jaime Bordelon, Gaston Bordelon.
*1234 Court composed of ULYSSES G. THIBODEAUX, JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD, JIMMIE C. PETERS, and MARC T. AMY, Judges.
SAUNDERS, Judge.
Mrs. Jaime Bordelon and Mr. Tommy Sayer were involved in an automobile accident. Mrs. Bordelon, who was rear-ended, filed suit against Mr. Sayer and his liability insurance carrier, National Automotive Insurance Company. On March 15, 2001, a hearing was held to confirm a preliminary default against him and National Automotive. Mr. Sayer and National Automotive filed a motion for a new trial, which was denied on April 27, 2001. At the confirmation hearing, Mrs. Bordelon submitted proof to establish all of the elements of a prima facie case against Mr. Sayer but not against National Automotive. Accordingly, we affirm the trial court's former decision but reverse its latter holding.

FACTS AND PROCEDURAL BACKGROUND
On February 26, 2000, Mr. Tommy Sayer rear-ended Mrs. Jamie Bordelon. During the collision, her face struck the steering wheel, and she received blunt trauma to the abdomen from her seatbelt. At the time of the accident, she was approximately five months pregnant.
According to Mr. Sayer's statement to police, the accident occurred because he was adjusting his car's air-conditioning unit rather than looking at the road. After the accident, the cars were removed from the road. An investigating officer, Sergeant Timmy Sayer, arrived at the scene. As a result of the investigation, Sgt. Sayer concluded that Mr. Sayer was at fault.
Mrs. Bordelon filed suit against Mr. Sayer and his alleged liability insurance carrier, National Automotive. The Defendants did not file an answer during the fifteen day period, which the law permits. In fact, more than thirty days had passed without any contact from their counsel. The Plaintiff took a preliminary default against them on March 2, 2001, and, on March 15, 2001, the trial court confirmed the default judgment.
Forty-four days after having received notice of the suit, National Automotive filed an answer to the petition for damages. It was a general denial, except for one paragraph, averring that it had issued, and had in full force and effect, a public automobile liability insurance policy, covering the vehicle that Tommy Sayer drove at the time of the accident. A hearing to show cause was scheduled for April 27, 2001. The trial court denied the motion for a new trial. The defendants lodged this appeal.

LAW AND ANALYSIS

ASSIGNMENTS OF ERROR
On appeal the defendant asserts the following assignments of error:
(1) The trial court committed manifest error when it rendered a default judgment without the requisite proof.
(2) The trial court committed legal error and abused its discretion when it denied the motion for new trial.

ASSIGNMENT OF ERROR NO. 1

DEFAULT JUDGMENT
On appeal, National Automotive alleges that Mrs. Bordelon did not carry her burden *1235 of proving the elements of her case by competent evidence, namely, that she failed to establish a prima facie case against them and failed to produce competent evidence that the accident caused her injuries.
Regarding her requisite proof, La.Code Civ.P. art. 1701(A) provides that "[i]f a defendant in the principle or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him." Under La. Code Civ. P. art. 1702, a judgment of default must be confirmed by proof of the demand, sufficient to establish a prima facie case, as fully as though the Defendants denied each of the allegations in the petition. Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254 (La.1993). In other words, the plaintiff must present competent evidence that convinces the court that it is more probable than not that she would prevail in a trial on the merits.
In reviewing default judgments, appellate courts are restricted to determining the sufficiency of the evidence offered in support of judgment. Washington v. Grand Casinos of LA., Inc.-Coushatta, 97-1297 (La.App. 3 Cir. 6/3/98); 715 So.2d 515. Although there is a presumption that the evidence presented supports a default judgment, this presumption does not attach when the record of the confirmation hearing is before the appellate court. Id. In such a case, the reviewing court is able to determine from the record whether the evidence upon which the judgment is based was sufficient and competent. Travis v. Commercial Union Ins., 569 So.2d 115 (La.App. 1 Cir.1990). Thus, because we have the record of the hearing to confirm the default, the presumption does not attach. However, the trial court's conclusion concerning the evidence's sufficiency presents a factual issue which the manifest error rule governs. The manifest error standard of review obligates appellate courts to give great deference to the trial court's findings of fact. Rosell v. ESCO, 549 So.2d 840 (La.1989). We will not reverse factual determinations, absent a finding of manifest error. Id.

MEDICAL EVIDENCE
Based on La.Code Evid. art. 803(4) and (6), Mrs. Bordelon entered into evidence complete certified copies of the medical records and bills from Avoyelles Hospital, Dr. L.J. Mayeux, Dr. Robert Levy, and Louisiana Therapy Services, as well as Dr. Levy's narrative report. The documents are relevant and are admissible under La. R.S. 13:3714 to establish her medical history, diagnosis, treatment, and costs. This statute provides:
Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any other state health care provider, as defined by La.R.S. 40:1299.39(A)(1) and any other health care provider as defined in R.S. 40:1299.41(A)(1), certified or attested to by the state health care provider or the health care provider, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the bills, medical narrative, chart, or record is sought to be used may summon and examine those making the original of the bills, medical narrative, chart, or record as witnesses under cross-examination.
*1236 The evidence regarding Mrs. Bordelon's injuries consists of her testimony, medical records, and bills. The record indicates that she drove herself to the hospital after the accident. A review of the medical records reveals that she was seen at Avoyelles Hospital on February 26, 2000, for injuries sustained during a car accident earlier that day; she received trauma to her abdomen and was advised to return to the emergency room if vaginal bleeding occurred; she suffered from left TMJ anteriorly displaced meniscuses with bilateral synovitis and capsulitis, which would require extensive treatment; and she needed physical therapy for her neck. As such, the records conclusively refute any theory that she did not incur injuries from the accident. Thus, the medical evidence compels us to find that she established a prima facie case of having suffered multiple injuries because of the February 26, 2000 accident and that, accordingly, the trial court was not manifestly erroneous in this part of its decision.

NARRATIVE REPORT
The Defendants object only to the admission of Dr. Levy's narrative report. They assert that the report does not conform to La.Code Civ. P. art. 1702(D), which requires:
When the demand is based upon a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony. (Emphasis added.)
In lieu of his testimony, Dr. Levy prepared a report which he entitled "Sworn Narrative Report," detailing his examination, diagnosis, and treatment of Mrs. Bordelon. The first sentence of his report states, "I certify the following report to be a true and correct report of my treatment of Mrs. Jaime Ruth Bordelon, date of birth, 01-09-1976." The report concluded, "Given the long-standing history of Mrs. Bordelon's symptoms, I feel more likely than not, that these are concurrent with those of a trauma-induced injury which occurred with her motor vehicle accident." At the conclusion of the report, Dr. Levy signed his signature. Notwithstanding, the defendants argue that this does not satisfy statutory requirements for a sworn narrative report and that, therefore, Mrs. Bordelon did not prove her damages by competent evidence.
To resolve this matter, we must determine whether Dr. Levy's report constituted a sworn narrative report by interpreting La.Civ.Code art. 1702(D). First, the starting point for the interpretation an article is to analyze the actual language of the article. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01); 808 So.2d 294. Upon review of the language, when the law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of legislative intent. La.Civ.Code art. 9. Upon on review of this article, we find that it is clear and unambiguous in requiring only a sworn narrative report. The Defendants argue that sworn means notarized or signed by another; however, the law does not dictate a manner in which the report should be sworn. The clear language of the statute only requires that it be sworn, and that is what Dr. Levy did. He stated and signed his sworn statement. Accepting the Defendant's argument would require a more extensive analysis of legislative intent, and because we find the article clear and unambiguous, we are prohibited from interpreting *1237 the article any further. As such, we find that his sworn statement is sufficient, and the trial court was correct in admitting it and relying on it in granting the default judgment.

PROOF OF LIABILITY AND INSURANCE
Regarding proof of liability, Mrs. Bordelon established that her injuries resulted from the February 26, 2000 accident, that Mr. Sayer was driving the offending vehicle, and that he was at fault. Thus, she proved his culpability. However, she submitted no proof that National Automotive was his insurer, providing a policy in full force and effect, at the time of the accident. Although she introduced the accident report, indicating this to be the case, the law requires that a copy of the policy be produced for this purpose. Arias v. State Farm Mut. Auto. Ins., 98-978 (La. App. 5 Cir. 3/10/99); 734 So.2d 730. The Defendants' subsequent admission that National Automotive insured Mr. Sayer at the time came too late to benefit Mrs. Bordelon's proof requirement.
Based on the record, we conclude that the trial court's decision in Mrs. Bordelon's favor, concerning Mr. Sayer, was not manifestly erroneous; however, it was, erroneous regarding National Automotive.

DAMAGES
In order to establish her damages, Mrs. Bordelon presented certified medical records and bills and the accident report in addition to her and her husband's testimonies.
She established that the accident caused her to have TMJ and daily headaches, both continuing into the trial. She, also, suffered multiple soft tissue injuries to her abdominal area as well as to her lower back and neck, which took approximately eight months to resolve. At the time of the accident her pregnancy greatly limited the available methods of treatment and, in fact, created complications. For example, she could not take certain medications, which the trial court believed likely delayed her recovery from the soft tissue injuries. Consequently, she participated in extensive physical therapy as prescribed by Dr. Mayeux.
She also testified that she saw Dr. Levy for a popping noise in her jaw which necessitated her wearing a splint every night, more than likely, for the remainder of her life. Additionally, at the time of the confirmation hearing, she was on a soft diet so that she could keep her jaw relatively closed and because chewing any hard or chewy food causes her significant pain.
Mr. Bordelon also testified during the hearing. After evaluating his testimony, the court found that Mrs. Bordelon's injuries "had a dramatic impact on her personal life and her family life," and that "there has been an adverse effect on the marital relationship."
The trial court awarded Mrs. Bordelon general damages of $50,000.00 for the TMJ injury and the soft tissue injuries; $2,588.85 for her special medical expenses; and $10,000.00 for future medical expenses. It awarded Mr. Bordelon $7,500 for his loss of consortium. Because there is sufficient evidence to support these damages, we affirm the amount of damages awarded by the trial court.

ASSIGNMENT OF ERROR NO. 2

NEW TRIAL
The defendants assert that the trial court committed manifest error by *1238 failing to grant a new trial. The trial court's discretion or ruling on a motion for new trial is great, and its decision will not be disturbed on appeal, absent an abuse of that discretion. Morehead v. Ford Motor Co., 29,399 (La.App. 2 Cir. 5/21/97); 694 So.2d 650, writ denied, 97-1865 (La.11/7/97); 703 So.2d 1265. Based on our jurisprudence, we must not disturb its denial of a request for a new trial after an entry of a default judgment, even though the defendant may urge, in the motion for a new trial, that he has a meritorious defense. Carroll v. Coleman, 27,861 (La. App. 2 Cir. 1/24/96); 666 So.2d 1264. Louisiana Code of Civil Procedure article 1972 provides the grounds for granting a new trial:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
In a motion for a new trial under either La.Code Civ.P. arts. 1972 or 1973, the trial judge may evaluate the evidence without favoring either party. "Generally, new trials are granted in the interest of justice, and are largely left to the discretion of the trial judge." Washington, 97-1297, p. 4; 715 So.2d at 517. Louisiana Code Civil Procedure article 1973 authorizes a new trial "in any case if there is good ground therefor, except as otherwise provided by law." The supreme court, in Lamb v. Lamb, 430 So.2d 51, 53 (La.1983), noted:
the general policy consideration ... that every litigant should be allowed his day in court. In Hardy v. Kidder, 292 So.2d 575 (La.1973), for example, we reversed the trial court's denial of a new trial application which had been timely filed after a preliminary default was confirmed. We found that the defendant should not have been denied the opportunity to assert his absolute defense to the plaintiff's suit where the failure to plead the defense was the result of his attorney's neglect rather than the client's fault.
(Citations omitted.)
However, the defendants improperly rely on this case to support their request for a new trial because Mr. Sayer was not attempting to assert his absolute defense. He negated his defense by admitting fault to Mrs. Bordelon.
In reviewing the record, we note that the investigating officer testified as to Mr. Sayer's negligence. In addition, the medical records introduced by the plaintiff establish that she was in a car accident and sustained injuries. Mrs. Bordelon established all of the elements of a prima facie case against Mr. Sayer. After reviewing the record in its entirety, we find that the default judgment against Mr. Sayer must stand, and, accordingly, we find that the trial court's denial of a new trial for Mr. Sayer was correct.
The defendants assert that the denial of that motion for new trial should be reversed because the insurance contract was not entered into evidence and that, therefore, Ms. Bordelon did not satisfy her burden of proving coverage. We agree. According to La.Code Civ.P. art. 1702(B)(1):

*1239 When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand.
The purpose of entering an insurance contract into evidence is to prove the proper company, the existence of a relationship with the insured, and the terms of the contract itself.
"A default judgment was entered against National Automotive. No valid default judgment can be rendered against an insurer without the introduction of the contract, except where the plaintiff files requests for admissions and the insured fails to reply timely." Arias, 98-978, p. 4; 734 So.2d at 732. As no insurance policy was introduced into evidence, and no requests for admissions were filed, the plaintiffs did not carry their burden of proof on this issue.
Accordingly, we find that National Automotive is entitled to a new trial based on an improper confirmation of a default judgment and on La.Code Civ.P. art. 1972(1). The trial court abused its discretion in denying the request. We reverse.

CONCLUSION
For the foregoing reasons, we affirm the default judgment and denial of a new trial regarding Mr. Sayer, but we reverse the rulings concerning National Automotive and grant it a new trial. Accordingly, we remand for further proceedings in accordance with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
WOODARD, J., dissents and assigns written reasons.
AMY, J., concurs in part and dissents in part and assigns written reasons.
WOODARD, J., dissenting in part.
I disagree with the majority's determination that Dr. Levy's narrative report satisfies the statutory requirement for a "sworn" narrative report in lieu of his testimony. La.Code Civ.P. art. 1702(D) requires:
When the demand is based upon a claim for personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony.

(Emphasis added.)
Instead of testifying, Dr. Levy prepared a report, detailing his examination, diagnosis, and treatment of Mrs. Bordelon. His report contained the notation: "I certify the following report to be a true and correct report of my treatment of Mrs. Jaime Ruth Bordelon, date of birth, 01-09-1976." The report concluded: "Given the long-standing history of Mrs. Bordelon's symptoms, I feel more likely than not, that these are concurrent with those of traumainduced injury which occurred with her motor vehicle accident." Notwithstanding, the Defendants argue that this document does not satisfy statutory requirements for a sworn narrative report; thus, Mrs. Bordelon did not prove her damages by competent evidence.
Although there are no statutory guidelines regarding what constitutes a "sworn" narrative report, it is significant to our analysis that La.Code Civ.P. art. 1702(D) expressly intends that the report is to be a substitute for testimony, which impliedly means testimony which would be under oath and, therefore, subject to perjury laws. Furthermore, jurisprudence indicates that "sworn" means a notarized *1240 oath.[1]
For example, in Neely v. State Dep't. of Pub. Safety, Drivers License Div.,[2] a motorist's license was suspended for driving while intoxicated. She sought to enjoin the enforcement of the suspension order, because the arresting officer had not taken an oath as part of his report, which he used to support the suspension. Thus, she argued that the report did not meet the requirements of La.R.S. 32:667, which requires a "sworn" statement. The officer's statement was in affidavit form, purported to have been sworn to, and, even, to have been subscribed before a notary. However, the notary did not sign it until the next day and never administered the oath to the officer. The pivotal issue for the court dealt with the meaning of "sworn." The second circuit refused to deem the arresting officer's report to be "sworn," even though it "appeared to be regular on its face," because he had not signed it in the presence of a notary.
Accordingly, for a document to be considered to be "sworn," the statement's author must have taken an oath, and taking an oath requires an affirmative act before another person who is authorized by law to administer it.
Indeed, in State v. Snyder,[3] the Louisiana Supreme Court expressed that:
[I]t has been generally held that to constitute a valid oath, there must be, in the presence of a person authorized to administer it, an unequivocal act by which the affiant consciously takes on himself the obligation of an oath.
And, in Plauche-Locke Secs., Inc. v. Johnson,[4] we approved the following rules:
Some unequivocal act, by which a person consciously takes on himself the obligation of an oath, is necessary to make a valid oath and to distinguish between an oath and a bare assertion or unsworn statement .... it is sufficient if the person swearing does some corporal act after having been called to do so and after his attention has been directed to the necessity of swearing to his statement, or if both the person swearing and the officer understand that what is done is proper for the administration of the oath and all that is necessary to complete the act of swearing.[5]
Thus, "swearing" is an affirmative act before another person, not just the mere inclusion of the magic word "sworn."
Apparently, the legislature is permitting the use of a statement to satisfy one's proof requirement, in lieu of testimony, provided that the statement has the same safeguards for veracity as testimony would; namely, when a statement has been given under oath, if, later, it is deemed to be false, the affiant is subject to criminal prosecution through a perjury charge.
In the instant case, Dr. Levy's report did not even include the word "sworn." Presumably, he intended the word "certify" to mean the same thing. However, he did not take an oath and did not sign his narrative report in the presence of a notary. There was no affirmative act of taking an oath before an authorized person, *1241 therefore, his report did not conform to the requirements of "sworn" under La. Code Civ.P. art. 1702(D) and should not have been admitted in evidence. Consequently, it should not have been used to assist Mrs. Bordelon in establishing her prima facie case against the defendants.
Notwithstanding, the certified medical records and bills, which she, also, introduced, are sufficient to establish her injuries, the causal connection between them and the accident with Mr. Sayer, and the amount of her damages. Thus, the trial court did not err in its ultimate determination.
AMY, J., concurring in part and dissenting in part.
Although I concur in the determination to grant National Automotive, the defendant's insurer, a new trial, I respectfully dissent from the remainder of the majority opinion.
La.Code Civ.P. art. 1702 states in pertinent part:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case....
D. When the demand is based upon a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony.
The defendant argues that the plaintiff failed to introduce sworn narrative reports of her treating physician as provided by La.Code Civ.P. art. 1702. In my opinion, this matter is analogous to the case of Meshell v. Russell, 589 So.2d 86 (La.App. 2 Cir.1991), as the record does not contain any medical witness testimony. Rather the plaintiff presented hospital records and what I find to be the unsworn report of her treating physician. The court found in Meshell that "[c]onsidering these deficiencies in the evidence presented at the confirmation of the default, we do not believe that there would be competent evidence to support the judgment, which finding also necessitates a new trial." Id. at 89. In Jules v. Lege, 618 So.2d 1121 (La.App. 5 Cir.1993), the plaintiff failed to submit medical reports that were sworn to or notarized. Again, the court found that the plaintiff's evidence "was not supported by competent, statutorily sufficient medical evidence" and held that the judgment of default should be set aside. Id. at 1121.
Although La.Code Civ.P. art. 1702(D) permits a sworn narrative report of the treating physician to be offered in lieu of testimony, I conclude that no sworn statement was submitted in this case. Instead, a report with the label "sworn narrative report" was admitted into evidence. The report lacked the form of an affidavit or notarial attestation nor did it contain witness verification. Rather, the report contains only the doctor's findings. It is my appreciation of the La.Code Civ.P. art. 1702(D) and the jurisprudence that follows it, that a sworn narrative statement requires more.
As the record reveals the inadequacy of the evidence presented and therefore, the deficiency in the default judgment, it is my opinion that the motion for a new trial should be granted in full. Accordingly, I respectfully dissent from the majority opinion insofar as it limits the granting of the new trial to the insurer, National Automotive.
NOTES
[1] 308 So.2d 880 (La.App. 2 Cir. 2/25/1975).
[2] Id.
[3] 304 So.2d 334 (La.1974).
[4] 187 So.2d 178 (La.App. 3 Cir.1966), citing 67 C.J.S. OATHS AND AFFIRMATIONS, § 6, p. 8.
[5] Id.